## IN RE: ESTATE OF VICTOR HAMMER, Deceased
### Case No. 85-2705 CP
Fifteenth Judicial Circuit, Palm Beach County

April 30, 1986

### OPINION OF THE COURT

EDWARD RODGERS, Circuit Judge.

THIS MATTER came before the Court on a Petition filed by Nancy Eilan, as Guardian of the Property of Irene Wicker Hammer, for a Petition to remove Dr. Armand Hammer and James Nemec as Co-Personal Representative of the Estate of Victor Hammer.

The Petition for Removal relies on several sections of F. S. 733.504(5)(9) which states, inter alia, that a personal representative may be removed for,

"(5) The wasting or maladministration of the estate and . . .

(9) The holding or acquiring by personal representative of a conflicting or adverse interest against the estate that will or may adversely interfere with the administration of the estate as a whole."

The issues were different for the two Co-Personal Representatives. The issues as to Dr. Armand Hammer were:

(1) Whether the Co-Personal Representative failed to timely file an Inventory. (The Inventory has been filed.)

(2) That Dr. Hammer had filed claim against the estate and whether the size of the claim alone placed him in a conflict position.

(3) Whether the Personal Representative refused to fire one Beverly Marello thereby causing the estate unnecessary expenses.

(4) Whether Dr. Hammer used estate's assets to pay Beverly Marello's bills, and

(5) Whether Dr. Hammer confiscated arts works from the estate to place in Hammer's Art Gallery.

As to the Co-Defendant, Attorney James Nemec, the primary objection seemed to have been that he abdicated his duties to the superior knowledge of Dr. Armand Hammer and therefore did not function with equal authority as Co-Personal Representative.

It appears from the testimony that Dr. Hammer does in fact have a separate lawsuit filed in another court of this circuit in which he claims that the decedent, Victor Hammer, signed several promissory notes promising to pay him $412,790.04 with interest at 12%; and a promissory note for $149,760.78 at 12%; and a promissory note for $39,163.36 at 12%; and a promissory note for $49,868.11 at 12%. The thrust then of the Petitioner's complaint was to show to the Court that Dr. Hammer's total efforts were directed towards the purpose of making sure there were sufficient liquid assets in the estate to satisy his claim should be prevail.

"The general rule of law is that simply a claim filed by a personal representative of that estate does not necessarily require his removal." See *Kolb v Levy*, 104 So.2d 874.

In fact it is a well settled principle in Florida law that a creditor may be appointed as Personal Representative to open an estate where no one else seeks to have the estate opened and the creditor may open the estate for the purpose of filing his claim. In the instant case, the Court had attempted to remove any conflict by appointing a Guardian Ad Litem who now represents the estate as a Personal Representative defending that claim in another lawsuit. The Respondent also raises the question of conflict because of the Co-Personal Representative's failure to distribute income to the beneficiaries also. One of the defenses is that there is an outstanding lawsuit for which the estate may be liable,

that being the claim of the Personal Representative. The Court fully agrees with the logic that if there are possible debts outstanding then, there should be no distribution of the assets of the estate until one is sure as to what the estate's liabilities will be. In the instant case, if the claim is established by another Court to be a valid claim, it makes no difference as to who is the Personal Representative, the claim will have to be paid from estate assets.

Testimony indicated that, at one time, Dr. Hammer had suggested that the art works belonging to the estate be sold. There was testimony that the house in Connecticut should be put up for sale. There was testimony that the Personal Representatives had anticipated and did in fact sell some of the bonds.

As to the house in Connecticut, it was the testimony of the Personal Representative that the house was only used by Nancy Eilan when she was in the Connecticut area and was a non-income producing asset of the estate and if the estate needed money, it should be sold.

As for the bonds, the testimony was that some of the bonds were sold and in fact had been sold at a reasonable profit and some of the bonds were still in the estate.

The gist of the Petitioner's dissatisfaction appears to be as to the claim, obviously, she does not feel that it is a valid claim. However this will be determined in another lawsuit. As to the Connecticut home, she obviously feels that it should remain a part of the estate's assets and ultimately, as a beneficiary of the estate, the house would go to her. She takes a position as far as the sale of the house is concerned that the house should not be sold because there is sufficient liquid assets in the estate to take care of any claim which is filed. This is contrary to her allegations that Dr. Hammer is attempting to liquefy the estate so as to handle Dr. Hammer's claims. The Court finds that the Personal Representative is duly obligated and charged with the responsibility of doing what is in the best interest for the estate, and has the total picture of the estate to consider.

One of the dissatisfactions also mentioned by the Petitioner was the failure of the Personal Representative to sell the stock held in the Occidental Corporation of which Armand Hammer is Chief Executive Officer. The attorney for the Petitioner urged the Co-Personal Representatives to get rid of the stock shortly after the estate was opened. Subsequently, testimony indicated that the stock did decrease in value, however, the Court was not aware of any expertise possessed by the attorney, who recommended that the Personal Representative sell the stock, which would qualify him as an expert in that area. Absence a

32

predicate for establishing an expert opinion, I see no reason that the Personal Representatives would rely upon his opinion. In fact, they might be in error to sell the stock upon the advice of someone who had no expertise in that area. While the failure to sell the stock may have caused an estate loss, the Court finds no evidence to show that such a policy decision was negligently made. Such an opinion can only be rooted in hindsight.

As to the charge, Mr. Nemec did not communicate with Dr. Hammer, the Court finds the parties did meet as often as was necessary to discuss the affairs of the estate. Dr. Hammer is generally known as a very wealthy man, is the Chief Executive Officer of Occidental Petroleum which is the twelfth largest corporation in the United States, and as a result, spends quite a bit of time in various other parts of the world. The Court would also mention, at this time, that it has been the Court's observation since sitting as a Probate Court Judge that much of he work done by the Personal Representative is only what his lawyer has asked him to do. Very rarely does the Personal Representative in a probate case serve as much more than a fifth wheel in the total movement of the estate.

The Court finds no evidence to support the allegations against Mr. Nemec. As to the art works, it does appear that they had been sent to New York for the purpose of obtaining appraisals. Testimony indicated that the art words were still in a gallery in New York and were capable of being shipped back here within a reasonable time. The Co-Personal Representatives stated that they had not been sold, but were only there for safe keeping. It is the Petitioner's contention that the art works had been in the family for some time and that the estate was liquid enough so as not to necessitate the sale of the art works.

The Court finds that although the method of payment for Mrs. Beverly Marello was somewhat unorthodox, the Court finds that it was money for work that she had performed while babysitting the art works after Mr. Hammer's death and before the art works could be shipped to New York. Testimony indicated that it was necessary for someone to be in the house in which the art works were located in order to qualify for the insurance.

The Court finds that the Petitioner has not carried her burden to show sufficient cause as to why Dr. Hammer and James Nemec should be removed as Co-Personal Representatives. The very core and reason for being of the probate law is to carry out the intent testator's last wish. In the instant case, the promissory note executed by Victor almost six months or more before the will was drawn. When the Will

was drawn, Victor Hammer had a choice to exclude or to appoint whomever he wanted to serve as Personal Representative. Since he appointed Dr. Hammer and Mr. Nemec, the Court is hard pressed to countermand his desires. The Florida cases teach us that the conflict, if any, must be much more than assumed and surmised as many of the fears are indicated here. In *Kolb v Levy*, 104 So.2d 874, the Court states:

> "Statutes authorizing County Judges' Court to remove personal representative for conflicting or adverse interest does not oblige court to remove a personal representative unless there is some tangible and substantial reason to believe that damage will otherwise accrue to the estate and such statutes do not conflict with statutes authorizing appointment of creditor as a personal representative and authorizing appointment of an administrator ad litem to represent estate when personal representative is enforcing a claim against the estate."

The Court finds insufficient evidence to require the removal of Mr. Nemec and Dr. Hammer. To find otherwise would require the Court to be carried away by street corner gossip and gut feelings of instant impressions which advocate the philosophy that rich people who have plenty of money ought not pursue claims against those who have less. It is thereupon,

ORDERED AND ADJUDGED that the Petition for Revocation of the Personal Representatives, Dr. Armand Hammer and Mr. James Nemec, is denied.

ORDERED in Chambers this 30th day of April, 1986, at West Palm Beach, Palm Beach County, Florida.